IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TAMMY M. ROCHELEAU                                                   PLAINTIFF

v.                                  CIVIL NO. 20-3033

ANDREW M. SAUL, Commissioner
Social Security Administration                                       DEFENDANT

# MEMORANDUM OPINION

Plaintiff, Tammy M. Rocheleau, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") under the provisions of Titles II of the Social Security Act ("Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.   Procedural Background

Plaintiff protectively filed her disability application for DIB on November 29, 2016, alleging an onset date of December 1, 2015, due to depression, degenerative disc disease, spinal stenosis, and atrial fibrillation. (Tr. 79, 91, 216). For DIB purposes, Plaintiff maintained insured status through September 30, 2020. (Tr. 33, Finding 1). Plaintiff's application was denied initially and again upon reconsideration. (Tr. 104-106, 108-109).

Plaintiff requested an administrative hearing which was granted, (Tr. 113-120) and Plaintiff's administrative hearing was held via video on February 6, 2018. (Tr. 31). Plaintiff

appeared in Harrison, Arkansas and the ALJ presided over the hearing from Fort Smith, Arkansas. *Id*. At the hearing, Plaintiff appeared with counsel and testified. (Tr. 31, 46-77).

On May 1, 2019, the ALJ entered a fully unfavorable decision, denying Plaintiff's application for DIB. (Tr. 28-40). The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; atrial fibrillation; hypertension; and obesity. (Tr. 33, Finding 3). Despite being severe, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35, Finding 4). Plaintiff had fifteen years of education, including three years of college, and testified at the hearing that she graduated. (Tr. 50, 88-89, 101, 217).

In his decision, the ALJ evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 36-39, Finding 5). Specifically, the ALJ found Plaintiff retained the RFC to perform light work, except she can occasionally stoop, crouch, and reach overhead bilaterally. (Tr. 36, Finding 5).

The ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 2015, her alleged onset date. (Tr. 33, Finding 2). With the assistance of a Vocational Expert ("VE"), the ALJ found Plaintiff could return to her Past Relevant Work ("PRW") as a bookkeeper, software analyst, or billing clerk. (Tr. 39-40, Finding 6). Because Plaintiff retained the capacity to perform her PRW, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, from December 1, 2015, through the date of his decision or through May 1, 2019. (Tr. 40, Finding 7).

Plaintiff requested the Appeals Council's review of the ALJ's unfavorable disability determination which was denied on March 10, 2020. (Tr. 1-6). Subsequently, Plaintiff filed this

action, which is before the undersigned pursuant to the consent of the parties. (ECF Nos. 2, 6). Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 15, 16).

The Court has reviewed the entire transcript. As the complete set of facts and arguments are presented in the parties' briefs, they are repeated here only to the extent necessary.

**II.     Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance of the evidence but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). Where there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and prevents her from engaging in any substantial gainful activity. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner's regulations require the ALJ to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if he reaches the final step does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Evidence Presented

On January 15, 2016, Plaintiff presented to North Central Arkansas Medical Associates with neck pain. (Tr. 379). Plaintiff reported the pain was constant and worsened by movement; Plaintiff reported she was unable to tip her head back. Plaintiff stated her pain was improved by rest, describing it as "mod[erate]-severe." She reported numbness, tingling, and pain that radiated to her thighs, rating the pain from 5-10. Her physical examination revealed a moderately reduced range of motion in her lumbar spine, decreased range of motion in her cervical spine in every direction due to pain, and pain in her lumbar spine and hips bilaterally with bending over. (Tr. 380). The remainder of her physical exam was normal, with normal mood and affect. Plaintiff was assessed with cervicalgia, bilateral low back pain with sciatica, and tingling in her extremities.

(Tr. 381). Diana S. Riley, PA, ordered an MRI of Plaintiff's cervical spine, and prescribed hydrocodone-acetaminophen 5-325 mg and Celestone 6mg/7mg. *Id.*

On January 26, 2016, Plaintiff presented to Baxter Regional Medical Center for an MRI of her cervical spine (related to low back pain with sciatica). (Tr. 336). Kyle McAlister, M.D., provided the following impression:

> Right neural foraminal stenosis at the C4-5 level and left neural foraminal stenosis at the C6-7 levels secondary to bony spurring and disc disease. No central canal stenosis is noted. No edema is noted in the cord. No compression of the cord is noted. I don't see a frankly herniated nucleus pulposus.

On February 2, 2016, Plaintiff was seen at North Central Arkansas Medical Associates to discuss neurosurgery, pain medication, and to follow-up regarding the MRI. (Tr. 384). Plaintiff complained of burning in her stomach and nausea from the pain medication. She also reported back, neck, and shoulder pain with tingling in her hands. The range of motion of Plaintiff's spine was good; however, she had pain with movement of her neck and low back. (Tr. 385). She was assessed with spinal stenosis of the cervical region, cervicalgia, tingling in her left hand, and gastroesophageal reflux disease without esophagitis. Diana S. Riley, PA, ordered a neurosurgery consultation, and prescribed Pantoprazole 40 mg and hydrocodone-acetaminophen 5-325 mg. (Tr. 386).

On May 13, 2016, Plaintiff returned to North Central Arkansas Medical Associates with back pain. (Tr. 387). Plaintiff was scheduled with a pain clinic but started to feel better, so she canceled the appointment, and as a result, Plaintiff was out of pain medication. Her physical exam exhibited no abnormalities, and she was assessed with bilateral low back pain with left/right sided sciatica. (Tr. 388). She was prescribed Xanax 0.5 mg and her prescription for hydrocodone-acetaminophen was refilled.

On August 25, 2016, Plaintiff was seen at North Arkansas Medical Associates for a referral to a pain clinic. (Tr. 389). Plaintiff reported pain, moderate in severity, without improvement. At the appointment, Plaintiff stated she was diagnosed with degenerative disc disease and spinal stenosis; she also revealed that she fell and "snapped her neck," and consequently, it was very sore. Plaintiff's physical exam was normal, and she had a normal range of motion in her spine, upper extremities, and lower extremities. (Tr. 391). Julie A. Norris, APRN, assessed Plaintiff with neck pain and refilled Plaintiff's hydrocodone-acetaminophen and Xanax prescriptions.

On December 5, 2016, Plaintiff returned to North Central Arkansas Medical Associates. (Tr. 399). Plaintiff had stopped taking her Pristiq medication due to side effects and cost; Plaintiff found a pain clinic in Harrison and requested an appointment but was denied further appointments because of failure to keep appointments. Plaintiff requested a refill on her hydrocodone during the visit. She had normal mood and affect, her judgment and insight were intact, and her judgment for everyday activities and social situations was within normal limits. (Tr. 400). Lisa Sherrill, APRN, assessed Plaintiff with moderate episode of recurrent major depressive disorder and cervicalgia; Nurse Sherrill prescribed Fluoxetine 20 mg and refilled Plaintiff's hydrocodone-acetaminophen and Xanax. Nurse Sherrill further instructed Plaintiff to keep her appointment with the pain clinic as no further prescriptions for hydrocodone would be given.

On January 11, 2017, Plaintiff presented to the Baxter Regional Emergency Room with palpitations. (Tr. 413). Dr. Dana Kinney found Plaintiff in no distress and that Plaintiff's exam was one hundred percent benign, stating "I cannot find a single thing wrong on her exam." While Plaintiff reported fever, chills, weakness, difficulty breathing, cough, abdominal pain, nausea, diarrhea, headaches, dysuria, fatigue, decreased appetite, malaise, chest pain, palpitations, back pain, muscle pain, joint pain, sore throat, and dizziness, Plaintiff's physical exam was normal. She

was diagnosed with feared complaint without diagnosis, and subsequently discharged home. (Tr. 415). Dr. Kinney advised Plaintiff to follow up with her primary care provider as soon as possible.

On January 17, 2017, state agency medical consultant, Dr. Ramona Bates found Plaintiff had exertional, postural, and manipulative limitations. (Tr. 85-87). Dr. Bates opined Plaintiff had the following exertional limitations: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and unlimited push and/or pull other than shown for lift and/or carry. (Tr. 85). Dr. Bates also concluded Plaintiff could climb ramps/stairs, ladders/ropes/scaffolds, balance, kneel, and crawl. (Tr. 86). Dr. Bates noted, however, that Plaintiff could only occasionally stoop and crouch.

On January 20, 2017, at the initial level, state agency medical consultant, Paul Cherry, Ph.D., concluded Plaintiff had mild limitations in the following areas: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Tr. 83). Dr. Cherry opined Plaintiff had no limitations in adapting or managing herself but did find that Plaintiff's depressive, bipolar and related disorders, anxiety, and obsessive-compulsive disorders were medically determinable impairments.

On February 16, 2017, Plaintiff presented to North Central Arkansas Medical Associates with chronic neck pain and low back pain, seeking medical prescriptions. (Tr. 416). She denied fever, chills, chest pain, altered mental status, shortness of breath, nausea, muscular weakness, tingling or numbness. (Tr. 417). According to her physical exam, Plaintiff's spine, upper extremities, and lower extremities all revealed a normal range of motion, with normal gait, normal mood and appropriate effect. (Tr. 418). Plaintiff was assessed with low back pain without

sciatica, unspecified back pain laterally, unspecified chronicity, and neck pain. Plaintiff was prescribed Cymbalta 30 mg, and her Xanax prescription was refilled. (Tr. 419).

On March 2, 2017, Plaintiff returned to North Central Arkansas Medical Associates. (Tr. 420). Plaintiff complained of neck pain radiating down to her arms since December 2016 but denied any injury or fall. (Tr. 421). Plaintiff's physical exam was normal; she reported taking Excedrin for pain relief. (Tr. 421-424). She reported she was referred to a pain clinic in February of 2016; however, she felt better so she rescheduled her appointment. (Tr. 421). Plaintiff reported ongoing depression but stated her insurance would not pay for the Cymbalta medication prescribed. Plaintiff further noted she had tried and failed both Prozac and Effexor. Edward White, M.D., prescribed Gabapentin 100 mg and instructed Plaintiff to see her primary care doctor and discuss chronic pain management before she admission to a new pain management clinic. (Tr. 424).

On April 6, 2017, at the reconsideration level, state agency medical consultant, Michael Hazlewood, Ph.D., found Plaintiff had mild limitations in the following areas: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Tr. 96). Dr. Hazlewood concluded Plaintiff had no limitations for adapting or managing oneself; like Dr. Cherry previously, Dr. Hazlewood determined Plaintiff's depressive, bipolar and related disorders, anxiety, and obsessive-compulsive disorders were medically determinable impairments.

On January 18, 2018, Plaintiff was admitted to Baxter Regional Medical Center with complaints of dizziness and weakness, (Tr. 527), complaining of chest discomfort after falling and hitting her chest. Dr. Melissa Quevillon noted Plaintiff's pain onset was just prior to her arrival and resolved during care. (Tr. 528). Plaintiff's significant other reported thinking she might have

8

had a seizure. According to Dr. Quevillon's notes, exacerbating factors for the fall included polysubstance abuse and heavy alcohol use. Plaintiff reported falling two weeks prior to her admission; she also reported lack of sleep as a result of taking care of an injured family member along with weakness and fatigue but no fever, abdominal pain, nausea, or vomiting. She reported anxiety, depression, and substance abuse but evidenced no acute distress during her exam. (Tr. 529). Although fatigued, Plaintiff presented no focal neurological deficits. Dr. Quevillon diagnosed Plaintiff with the following: syncope; urinary tract infection ("UTI"); substance abuse; and dehydration, prescribing Cipro 500 mg for her UTI. (Tr. 531).

On September 11, 2018, Plaintiff reported to Samuel B. Hester, Ph.D., for a mental diagnostic consultative examination. (Tr. 452-458). No cognitive changes were noted, and no cognitive complaints reported. (Tr. 452). Plaintiff did report sadness related to living in pain; however, Dr. Hester found this situational with neither a history of psychosis nor any psychotic symptoms. Plaintiff reported suicidal ideations with no intent and no homicidal ideations. Dr. Hester observed there were not enough personality traits observed to warrant the diagnosis of a personality disorder but noted Plaintiff was being treated for depression related to living in pain. (Tr. 453). Regarding Plaintiff's history of psychiatric treatment, she reported Lyrica and Effexor have helped her cope with chronic pain without side effects. Dr. Hester noted Plaintiff has a history of methamphetamine use and alcohol abuse, attending detox and participating in therapy for two years. (Tr. 454). Dr. Hester noted Plaintiff was "clean" from meth for nineteen years but still relapses with alcohol.

Plaintiff presented at the mental diagnostic evaluation well-groomed and appropriately dressed, displaying cooperation and a good attitude; she presented with anxiety, but her affect was appropriate to mood. Plaintiff did not illustrate any abnormalities in fluency, rate, or volume, and

her communication was effective. Dr. Hester opined Plaintiff's thought process was logical with no looseness of associations. (Tr. 454-455). Plaintiff did not display any overvalued ideas, bizarre obsessions or preoccupations, and did not report any hallucinations or delusions. Based on the current findings, educational history, nature of prior work, and general level of adaptive functioning, Dr. Hester concluded Plaintiff did not appear to be functioning within or near the intellectual disability range; however, Dr. Hester found Plaintiff's responses on the intellectual assessment scored in the low average range of intelligence. (Tr. 455-456). Dr. Hester diagnosed Plaintiff with pain disorder, neck, back pain, degenerative disc disease, arthritis, depressive disorder by history, amphetamine abuse in full sustained remission, and alcohol abuse. (Tr. 456). Regarding effects of identified mental impairments on adaptive functioning, Plaintiff was able to drive but had lost her vehicle. (Tr. 457). Plaintiff was able to perform most activities of daily living autonomously, do her own shopping and bill paying; it was noted she rarely participates in social groups. According to Dr. Hester, Plaintiff has a limited capacity to communicate and interact in a socially adequate manner; however, Dr. Hester found Plaintiff possesses capacity to communicate in an intelligible and effective manner and can cope with the mental demands of basic work tasks, attending to and sustaining concentration on basic tasks and exhibiting persistence in completion of tasks. Dr. Hester noted Plaintiff can timely complete work tasks unless her pain interferes and that she can manage funds without assistance. (Tr. 457-458).

On September 22, 2018, Plaintiff was admitted to Baxter Regional Medical Center with complaints of weakness after falling at home. (Tr. 466). She woke up dizzy, short of breath, and weak; upon arrival at the emergency room, Plaintiff vomited a moderate amount of bright red blood, admitting to drinking a pint of tequila daily and drinking "a lot" of vodka the previous day. Plaintiff underwent an upper endoscopy which revealed a duodenal ulcer that required

cauterization, and Plaintiff required four units of packed red blood cells throughout her hospitalization. (Tr. 467). Plaintiff was then treated with IV PPI therapy while exhibiting symptoms of alcohol withdrawal. Plaintiff was placed on Librium and had significant improvement in her symptoms and resolution of her GI bleeding and stabilization of her hemoglobin and hematocrit. Upon discharge, Plaintiff was encouraged to stop smoking and was provided nicotine patches to help her quit; she was also counseled on the need for alcohol cessation and verbalized understanding of same. (Tr. 468).

On November 26, 2019, Plaintiff presented to the Buffalo River Clinic with depression, anxiety, post-traumatic stress disorder ("PTSD"), ETOH abuse, and a new psychiatric evaluation. (Tr. 8). Plaintiff denied illicit drug use but admitted to abusing alcohol, stating that she previously had been to rehab, currently drinks one pint of tequila daily and has no interested in ceasing. Derainey Smith, APRN, assessed Plaintiff with recurrent depressive disorder, generalized anxiety disorder, PTSD, and alcohol abuse, recommending inpatient detox treatment which Plaintiff declined. Nurse Smith prescribed Duloxetine 30 mg once a day for thirty days for depression in addition to Buspirone 10 mg; Trazodone 150 mg; and Duloxetine 60 mg for generalized anxiety disorder. Nurse Smith advised Plaintiff to attend AA and referred Plaintiff to a therapist.

## IV. Discussion

Plaintiff raises the following issue on appeal: whether the ALJ properly evaluated Plaintiff's severe impairments. (ECF No. 15, p. 2-5). Specifically, Plaintiff asserts the ALJ erred in failing to find Plaintiff's alcohol use disorder to be a severe impairment.

A claimant suffers from a severe impairment if that impairment is more than slight and if that impairment affects the claimant's ability to do his or her basic work activities. *See Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988). The Supreme Court has also held

that a claimant does not suffer from a severe impairment where the claimant only suffers from "*slight abnormalities* that do not significantly limit any 'basic work activity.'" *See Bowen v. Yuckert*, 482 U.S. 137, 155 (1987) (O'Connor, S., concurring) (emphasis added); *see also Brown v. Bowen*, 827 F.2d 311, 311-12 (8th Cir. 1987) (adopting Justice O'Connor's language from *Bowen v. Yuckert*). *See also Kirby v. Astrue*, 500 F.3d 705, 707-09 (8th Cir. 2007). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In addition, impairments that are controllable or amenable to treatment do not support a finding of total disability. *Id*.

The Eighth Circuit has held that drug and alcohol use become material only if the ALJ finds a claimant disabled under the five steps of the sequential evaluation process. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). Specifically, the ALJ is required first to consider whether a claimant is disabled, regardless of cause, before determining whether substance abuse was a contributing factor. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010) (citing *Brueggemann*, 348 F.3d at 693). In this case, the ALJ did not err in his treatment of Plaintiff's alcohol and substance abuse as he did not find Plaintiff disabled under the initial five-step analysis. *See Holt v. Astrue*, No. 2:10-CV-03044-JRM, 2011 WL 1261155, at *7 (W.D. Ark. Apr. 4, 2011) (citing *Brueggemann*, 348 F.3d at 694).

At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine; atrial fibrillation; hypertension; and obesity. (Tr. 33, Finding 3). However, the ALJ concluded Plaintiff's medically determinable mental impairments of depressive disorder, anxiety, and alcohol abuse, considered singly and in combination, "do not cause more

than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 34).

The Court avers that even if the ALJ erred by not finding Plaintiff's alcohol use to be a severe impairment at step two, such error was harmless because the ALJ clearly considered all of Plaintiff's limitations – severe and nonsevere – in determining Plaintiff's RFC. *Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC"); *see also Quinn v. Colvin*, No. 3:14-CV-03008-MEF, 2015 WL 4399476, at *3 (W.D. Ark. July 17, 2015); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The ALJ found that Plaintiff's alcohol abuse is not a severe impairment but that it acted as an aggravating factor, illustrating inconsistencies between Plaintiff's subjective complaints and other evidence. (Tr. 38). Specifically, the ALJ discussed medical records from January 18, 2018, when Plaintiff presented to Baxter Regional Medical Center with a syncopal episode and had engaged in heavy alcohol use but, upon Plaintiff's discharge, Dr. Quevillon noted Plaintiff's condition had improved, requiring prescription of only an antibiotic. (Tr. 38, 528, 531). The ALJ also discussed Plaintiff's admission to the hospital in September 2018 where Plaintiff admitted to drinking a pint of tequila daily and drinking a lot of vodka the day prior to her admission, noting she was treated for symptoms of alcohol withdrawal and prescribed Librium which resulted in

significant improvement to her symptoms. (Tr. 38, 466, 467). The ALJ found this record evidence further showed that Plaintiff's subjective complaints were inconsistent with other evidence establishing that Plaintiff "improves with treatment and abstaining from alcohol." (Tr. 39). The ALJ correctly concluded that "[a]n impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Based on a review of the record, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant period, thus, the Court finds no basis for remand at step two.

**V.     Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. Plaintiff's Complaint will be dismissed with prejudice.

IT IS SO ORDERED this 9th day of July 2021.

*/s/ Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE